[No. B174594. Second Dist., Div. Two. Aug. 22, 2006.]

CHAD ALLAN THOMPSON, as Special Administrator, etc., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Robert Mann and Donald W. Cook for Plaintiff and Appellant.

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence, Paul B. Beach and Jin S. Choi for Defendants and Respondents.

OPINION

**DOI TODD, Acting P. J.**—Plaintiff and appellant Chad Allan Thompson, as Special Administrator,[1] appeals from a judgment in favor of defendants and respondents the County of Los Angeles (County), Jerry Harper, Edward Baker, Robert Devot and Daniel Burt following a jury trial on appellant's

---

[1] The original plaintiff, Brett Thompson, died in December 2002 before the matter went to trial. For simplicity, we refer interchangeably to both Thompson and his estate as "appellant."

cause of action for liability under section 1983 of title 42 of the United States Code (section 1983). Appellant contends that the trial court improperly instructed the jury regarding the definition of deadly force, that it abused its discretion in excluding two reports concerning the conduct of the Los Angeles County Sheriff's Department and the use of dogs in law enforcement, and that it erred in dismissing his third cause of action for liability under Civil Code section 52.1, subdivision (b).

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

*Appellant's Arrest and Injuries.*

On February 8, 1991, appellant tried to steal two cars. The first attempt failed when the owner pulled the coil wire, killing the engine, and the second attempt failed when the owner telephoned for help. Shortly thereafter, Los Angeles County Sheriff's Deputy Patrick Cleary responded to an attempted robbery and car theft call at a 7-Eleven store in Downey. When he arrived at the store, he saw appellant run through a nearby alley and then climb over a block wall. Once Deputy Cleary had positioned himself at one end of the alley and some neighborhood youths at the other end to contain appellant, he called for backup.

Sheriff's Deputy Ken Lawrence, a dog handler, and Sergeant Robert Devot were among those who responded to Deputy Cleary's call. They learned that appellant was a carjacking suspect on parole and that he had a prior weapons-related offense, but they did not receive any information to establish that he was armed or had injured anyone at this particular time. The deputies announced via both car loudspeakers and a helicopter that a dog would be deployed. At that point, appellant was under a car in a carport, hiding from the police. Approximately 15 minutes after the announcement—and 30 to 40 minutes after appellant had climbed over the block wall—the deputies began using a search dog.

The dog made its way to the carport where appellant had been hiding for 30 minutes, and Deputy Lawrence deployed the dog into that area attached to a 60-foot leash. When the dog first barked at appellant, he did not move. A few moments later, appellant heard a voice, the dog stopped barking and lights shone on the carport area. Appellant heard a voice over a loudspeaker directing him to come out from under the car with his hands in the open. As he started to comply, the dog bit appellant's leg. Appellant screamed "get him off."

Meanwhile, Deputy Lawrence could not see the dog once it had entered the carport; he first saw it again when appellant, seated, was fighting with the dog—trying to pull the dog's muzzle off of his leg and punching the dog in the head. The dog continued to bite down on appellant's leg and also bit his hand when he tried to remove the dog by grabbing and pulling on its jaw. Both Deputy Lawrence and Sergeant Devot yelled at appellant to stop fighting the dog, but appellant continued to struggle with the dog, eventually grabbing and twisting its collar, choking the dog.

At that point, Deputy Lawrence began striking appellant with his flashlight, hitting appellant's left arm, shoulder and leg in order to stop him from fighting the dog. Sergeant Devot also used his flashlight to strike appellant once. When appellant still had not released the dog, Sergeant Devot grabbed appellant's arm while Deputy Lawrence grabbed the dog's collar and pulled the dog off. Deputy Lawrence kicked appellant's upper body while pulling the dog away and both he and Sergeant Devot were ultimately able to restrain appellant.

Sergeant Devot and Deputy Cleary then handcuffed appellant. Appellant lost consciousness intermittently, waking up at one point in a patrol car and at another point in an ambulance. He regained full consciousness at Los Angeles County USC Medical Center, where he remained for the next four days. He sustained a large laceration to his lower left leg and backside as a result of the dog bite, as well as dog bites on his hands. He also sustained a blunt force trauma to his lower right leg. After his release from the hospital, he was confined to the jail hospital for another month. He also suffered an infection that required daily care for several months. Longer term, appellant lost some control over his left foot, had significant tissue loss and suffered from prominent deformities and scar tissue that negatively affected his mobility.

*Pleadings and Motions.*

In January 1992, appellant filed a complaint against the County and numerous individuals, alleging violations of both federal and state law. In an unpublished decision filed in July 1995, we reversed summary judgment in favor of all defendants, with the exception of two causes of action that appellant had abandoned, finding that triable issues existed regarding the reasonableness of the officers' conduct and the adequacy of the officers' training.

In June 1997, appellant filed a first amended complaint against the County and Sheriff's Deputies Jerry Harper, Daniel Burt, Edward Baker, Robert Devot, Ken Lawrence, Patrick Cleary and James Ramsey, alleging four

causes of action: (1) excessive force in violation of section 1983; (2) negligence; (3) violation of Civil Code section 52.1, subdivision (b); and (4) declaratory and injunctive relief.[2] In January 1999, we filed a second unpublished opinion reversing summary judgment in favor of three supervisory sheriff's department officials, in which we concluded that "[r]espondents' evidence did not establish as a matter of law that the training, supervision, and control of Lawrence and other dog handlers and deputies was reasonable, or, more pertinently, not conducted with deliberate indifference to the constitutional rights of arrestees."

Defendants thereafter demurred to the first amended complaint and moved for judgment on the pleadings. In February 2000, the trial court sustained the sheriff's department's demurrer without leave to amend and to the first and third causes of action, granted the County's motion for judgment on the pleadings as to the first cause of action, and granted the individual defendants' motion for judgment on the pleadings as to the third cause of action.

*Pretrial Proceedings, Trial and Judgment.*

Before trial, defendants moved in limine to exclude admission of a report known as the "Kolts Report" on several grounds, including that it was hearsay. The Kolts Report was the result of an investigation independent of this matter conducted by retired Judge James Kolts, who was retained by the County as special counsel to review and make recommendations as to "the policies, practices and procedures of the Sheriff's Department, including recruitment, training, job performance and evaluation, record keeping and management practices, as they relate to allegations of excessive force, the community sensitivity of deputies and the Department's citizen complaint procedure." Appellant opposed the motion, contending the report was admissible under an exception to the hearsay rule as an authorized admission of a party. At several different junctures in the proceedings, the trial court declined to admit the Kolts Report, finding appellant had not met his burden to show that it was an authorized admission.

Appellant also sought admission of what the parties refer to as the "*Avila* summaries," which were summaries of medical treatment provided to persons bitten by a sheriff's department dog used by a particular sheriff's deputy and prepared by the County in an unrelated case at the request of United States District Court Judge Matthew Byrne. Appellant contended that admission was authorized under Evidence Code section 1220 as an admission of a party

---

[2] The Los Angeles County Sheriff's Department was later added as a Doe defendant.

opponent and Evidence Code section 1280 as a business record. The trial court disagreed, ruling that the *Avila* summaries did not fall within any exception to the hearsay rule and, in any event, that they were unduly prejudicial under Evidence Code section 352.

The trial court further refused to give an instruction premised on the Model Penal Code's definition of deadly force, which includes "force which is reasonably capable of causing serious bodily injury . . . ." Instead, the trial court instructed the jury on the use of excessive force, finding that the pertinent inquiry was whether the deputies' use of force was reasonable under the circumstances. Accordingly, it instructed the jury that "[f]orce is not excessive if it is reasonably necessary under the circumstances to make a lawful arrest" and that appellant had the burden to show that the sheriff's deputies used excessive force which was a substantial factor in causing him harm.

Trial commenced December 1, 2003, on the first phase on appellant's first cause of action for violation of section 1983 against four supervisory sheriff's deputies and on his second cause of action for negligence against the same deputies and the County under the theory of respondeat superior. The jury was asked to determine whether appellant suffered a constitutional violation and whether excessive force was used under state law. The second and third phases would address supervisory liability and damages, respectively.

Before the matter was submitted to the jury, appellant dismissed his cause of action for negligence, which eliminated the County as a defendant. The jury returned a verdict in favor of the individual defendants, answering "No" to the first special verdict question: "Did one or more Los Angeles County Sheriff's deputies use unreasonable force in arresting Brett Thompson?" In February 2004, the trial court entered judgment in favor of all defendants.

Appellant's appeal followed. Defendants thereafter filed a protective cross-appeal.

## DISCUSSION

Appellant raises four separate challenges to the judgment. First, he contends that the trial court prejudicially erred in refusing to instruct the jury with a definition of "deadly force" that included force creating either a substantial risk of death or serious bodily injury. Second, he asserts that the trial court abused its discretion in excluding the Kolts Report as hearsay. Third, he similarly asserts that the trial court abused its discretion in excluding the *Avila* summaries as hearsay and under Evidence Code section

352. Finally, he contends that the trial court erred in dismissing his third cause of action before trial, which alleged liability under Civil Code section 52.1, subdivision (b). We find no merit to any of these challenges.

## I. *The Trial Court Properly Instructed the Jury Regarding the Use of Force.*

Appellant requested several jury instructions on the use of deadly force, including instructions providing that " '[d]eadly force' means force which is reasonably capable of causing serious bodily injury or death," "the police may use deadly force to arrest only if the crime for which the arrest is sought was a forcible and atrocious one which threatens death or serious bodily harm," and "[y]ou are instructed that as a matter of law the officers were not justified in using physical force against plaintiff which created a substantial risk of causing death or serious bodily injury to plaintiff." In a three-page written decision, the trial court refused these instructions, rejecting the notion that "the same definition of deadly force for purposes of defining criminal liability in assault, battery and related substantive criminal laws should be applied to measure law enforcement conduct under the Fourth Amendment." Instead, the trial court instructed the jury that appellant claimed the sheriff's department violated his rights under section 1983 through an unreasonable use of force. The jury was asked to determine, first, whether unreasonable force was used and, second, whether the defendants were "responsible for the use of unreasonable force through personal participation in the use of force or through deliberate indifference in the training or supervision of Los Angeles Sheriff's Department dog handlers."

With respect to the determination of whether unreasonable force was used, the instructions provided in relevant part: "Brett Thompson claims that Los Angeles County Sheriff's deputies used unreasonable force in arresting him. To establish this claim, Brett Thompson must prove all of the following: 1. That Los Angeles County Sheriff's deputies used force in arresting Brett Thompson; 2. That the force used by the sheriff's deputies was unreasonable; 3. That Brett Thompson was harmed; 4. That the sheriff's deputies' use of unreasonable force was a substantial factor in causing Brett Thompson's harm. Force is not excessive if it is reasonably necessary under the circumstances to make a lawful arrest. In deciding whether force is reasonably necessary or excessive, you should determine what force a reasonable law enforcement officer would have used under the same or similar circumstances. You should consider, among other factors, the following: A. The seriousness of the crime at issue; B. Whether Brett Thompson reasonably appeared to pose an immediate threat to the safety of the deputies or others;

and C. Whether Brett Thompson was actively resisting arrest or attempting to avoid arrest. . . . The use of a trained police dog to find and bite a fleeing or hiding criminal suspect [constitutes] a police use of force. Whether that force is reasonable or unreasonable depends upon the facts and the circumstances known to the officer at the time the force is used."

■ We independently review a claim of instructional error, as the underlying question is one of law, involving the determination of applicable legal principles. (*People v. Alvarez* (1996) 14 Cal.4th 155, 217 [58 Cal.Rptr.2d 385, 926 P.2d 365]; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 427 [72 Cal.Rptr.2d 720].) " ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given. [Citation. ]" ' [Citation.] 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' [Citation.]" (*People v. Martin* (2000) 78 Cal.App.4th 1107, 1111–1112 [93 Cal.Rptr.2d 433]; accord, *People v. Clair* (1992) 2 Cal.4th 629, 663 [7 Cal.Rptr.2d 564, 828 P.2d 705]; *Kostecky v. Henry* (1980) 113 Cal.App.3d 362, 375 [170 Cal.Rptr. 197].) Instructional error will not result in a reversal of a judgment unless the reviewing court finds that a miscarriage of justice has resulted from the error, such that there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have resulted. (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572–580 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

We find no error. (See *Belair v. Riverside County Flood Control Dist.* (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070] ["a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason"].) Appellant correctly notes that following the trial in this matter, the Ninth Circuit Court of Appeals adopted a definition of deadly force to include force creating a substantial risk of serious injury, thereby overruling the authority on which the trial court had relied in refusing appellant's deadly force instruction. (See *Smith v. City of Hemet* (9th Cir. 2005) 394 F.3d 689 (*Smith*).) Nonetheless, courts applying the deadly force definition advocated by appellant uniformly hold that the use of a trained police dog does not constitute deadly force. The trial court therefore properly instructed the jury that the use of force in this instance was to be analyzed under the reasonableness standard applied to claims of excessive force.

## A. *Deadly Force Versus Excessive Force.*

■ The Fourth Amendment's prohibition on "unreasonable . . . seizures" protects individuals from excessive force in the context of an arrest or seizure. (U.S. Const., 4th Amend.; see *Graham v. Connor* (1989) 490 U.S. 386, 394 [104 L.Ed.2d 443, 109 S.Ct. 1865] (*Graham*).) Claims that the amount of force used during an arrest or seizure was excessive are analyzed under the objective reasonableness standard of the Fourth Amendment. (*Graham, supra,* at p. 399; *Tennessee v. Garner* (1985) 471 U.S. 1, 7 [85 L.Ed.2d 1, 105 S.Ct. 1694] (*Garner*).) Determining whether the force used was reasonable requires a careful balancing of " ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the countervailing governmental interests at stake." (*Graham, supra,* at p. 396.) "Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. [Citation.]" (*Ibid.*)

■ *Graham* explained that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." (*Graham, supra,* 490 U.S. at p. 395; see *Blanford v. Sacramento County* (9th Cir. 2005) 406 F.3d 1110, 1115 ["All claims of excessive force, whether deadly or not, are analyzed under the objective reasonableness standard of the Fourth Amendment as enunciated in *Graham* and *Garner*"].) The reasonableness test requires careful attention to the facts and circumstances of each particular case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. (*Graham, supra,* at p. 396; *Blanford v. Sacramento County, supra,* at p. 1115.) Consistent with the nature of this individualized inquiry, "*Garner* articulates a more particularized version of the Fourth Amendment's objective reasonableness analysis for assessing the reasonableness of deadly force. The Court explained that while it is unreasonable to apprehend an unarmed, nondangerous suspect by killing him, an officer's use of deadly force to prevent escape satisfies Fourth Amendment standards '[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others.' [Citation.]" (*Blanford v. Sacramento County, supra,* at p. 1115, fn. omitted; see also *Quintanilla v. City of Downey* (9th Cir. 1996) 84 F.3d 353, 357 [under the 4th Amend.'s balancing analysis, "the use of deadly force is reasonable only if: 1) it is necessary to prevent escape; 2) the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to him or to others; and 3) if feasible, the officer has given some warning"].)

Courts must apply the reasonableness standard objectively, viewing the facts from the perspective of the officer at the time of the incident and not with the benefit of hindsight. (*Graham, supra,* 490 U.S. at pp. 396–397; accord, *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 343 [54 Cal.Rptr.2d 772].) Briefly stated, the constitutional question is "whether the totality of the circumstances justifie[s] a particular sort of . . . seizure." (*Garner, supra,* 471 U.S. at pp. 8–9.)

B. *The Law Does Not Support Appellant's Claim That Use of a Trained Police Dog Constitutes Deadly Force.*

Appellant contends that the jury should have been instructed on the balancing process required for a claim of deadly force, rather than that required for a claim of excessive or unreasonable force. His argument is premised on the definition of "deadly force" approved by the court in *Smith.* There, the court expressly overruled *Vera Cruz v. City of Escondido* (9th Cir. 1997) 139 F.3d 659, 663, which had held that deadly force means " 'force reasonably likely to kill' " and had explicitly rejected a definition that included the phrase " 'or result in serious bodily injury.' " (*Smith, supra,* 394 F.3d at p. 705.) Noting that virtually all other jurisdictions employed a more liberal definition of deadly force, the *Smith* court adopted a definition of deadly force as that which " 'creates a substantial risk of causing death or serious bodily injury.' " (*Id.* at p. 706.) Given the *Smith* court's expansion of the definition of deadly force to encompass force creating a substantial risk of serious bodily injury, appellant asserts that the jury should have been given instructions on the use of deadly force.

But appellant's definitional argument ignores that jurisdictions across the country—including those that employ the definition of deadly force ultimately approved in *Smith*—uniformly hold that officers' use of a trained police dog does not constitute deadly force. (E.g., *Dunigan v. Noble* (6th Cir. 2004) 390 F.3d 486, 492, fn. 8 ["No federal appeals court has held a properly trained police dog is an instrument of deadly force"]; *Miller v. Clark County* (9th Cir. 2003) 340 F.3d 959, 961–963 [officer's ordering a police dog to bite a suspect's arm or leg and permitting the dog to continue biting for up to one minute did not constitute use of deadly force]; *Kuha v. City of Minnetonka* (8th Cir. 2003) 365 F.3d 590, 598 ["review of excessive force claims involving police dogs is properly governed by the general standard established in *Graham* rather than the deadly force standard of *Garner*"]; *Jarrett v. Town of Yarmouth* (1st Cir. 2003) 331 F.3d 140, 149–150 [finding that releasing a police dog trained to bite and hold does not constitute use of deadly force];

see also *Marquez v. City of Albuquerque* (10th Cir. 2005) 399 F.3d 1216, 1220, fn. 1 [assuming that the use of a trained police dog did not constitute deadly force in holding substantial evidence supported a defense verdict, because all jurisdictions considering the issue had held it does not].) In one of the earliest cases to consider the issue, *Robinette v. Barnes* (6th Cir. 1988) 854 F.2d 909, a burglary suspect died after being bitten by a police dog who had been commanded to find him. Even under those circumstances, the court held: "[W]e find that the use of a properly trained police dog to apprehend a felony suspect does not carry with it a 'substantial risk of causing death or serious bodily harm.' " (*Id.* at p. 912, fn. omitted.)

Appellant contends that a discussion in *Smith, supra,* 394 F.3d 689, requires that we consider it an open question whether the use of a trained police dog constitutes deadly force. There, after concluding that the definition of deadly force should be expanded to conform to other jurisdictions, the *Smith* court noted: "We need not here determine whether the use of a police dog to subdue a suspect constitutes deadly force generally or the circumstances under which such use might constitute such force. . . . We note only that while we have not in any of our prior cases found that the use of police dogs constituted deadly force, we have never stated that the use of such dogs cannot constitute such force. *Cf. Robinette v. Barnes,* [*supra,*] 854 F.2d 909, 913 (6th Cir. 1988) (although failing to find that the police dog in that case constituted deadly force, the court stated that 'an officer's intent in using a police dog, or the use of an improperly trained dog, could transform the use of the dog into deadly force'). *Compare Kuha,* 365 F.3d at 598 n. 3 ('[T]he use of a properly trained police dog in the course of apprehending a suspect does not constitute deadly force')." (*Smith, supra,* 394 F.3d at p. 707, fn. omitted.)

■ In *Smith,* the court reversed summary judgment on the ground that a reasonable trier of fact could conclude that the officers used not only deadly but also unreasonable force in subduing the plaintiff. There, the evidence showed that officers used pepper spray to disable the unarmed plaintiff and then issued three separate commands to their dog to bite the plaintiff. (*Smith, supra,* 394 F.3d at pp. 693–694.) In view of this evidence, the court reasoned that "[e]ven excluding the question of whether the police dog constituted deadly force, a jury well could find that, given the circumstances, the totality of force used—four blasts of pepper spray, slamming Smith down onto the porch, dragging him off the porch face down, ordering the canine to attack him three times, and the resultant dog bites and physical assaults on his body—was unreasonable." (*Id.* at pp. 703–704.) Thus, the question of deadly force was left open in *Smith* because of an extreme set of facts which a trier

of fact could find constituted unreasonable force. Here, on the other hand, the jury concluded that sheriff's deputies did not use unreasonable force. Appellant has not claimed that the verdict is unsupported by substantial evidence. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [188 Cal.Rptr. 115, 655 P.2d 317] [issues not raised on appeal deemed waived]; *Fidelity Mortgage Trustee Service, Inc. v. Ridgegate East Homeowners Assn.* (1994) 27 Cal.App.4th 503, 507, fn. 5 [32 Cal.Rptr.2d 521] [same].) Accordingly, *Smith* does not require that we depart from the great weight of authority holding that use of a trained police dog does not constitute deadly force.

Indeed, the circumstances here are more akin to those cases that have rejected the precise argument here—that a jury should be instructed on the use of deadly force when an arrestee brings a section 1983 action following injuries from a police dog. For example, in *Quintanilla v. City of Downey, supra,* 84 F.3d 353, the court found that the district court properly refused to instruct the jury on the use of deadly force where the plaintiff suffered non-life-threatening injuries from a police dog, and the dog was trained to release on command and did release the plaintiff when commanded to do so. (*Id.* at p. 358.) Significantly, the court reached this conclusion using the definition of deadly force advocated by appellant, explaining that deadly force warranting a *Garner* instruction is " 'force that creates a substantial risk of causing death or serious bodily harm.' " (*Quintanilla v. City of Downey, supra,* at p. 357; accord, *Fikes v. Cleghorn* (9th Cir. 1995) 47 F.3d 1011, 1014 [where deadly force was defined as " 'force that creates a substantial risk of causing death or serious bodily harm,' " instructions on deadly force properly not given as there was no evidence that use of a police dog created such a risk].)

As in *Quintanilla,* appellant suffered non-life-threatening injuries that required medical attention. (See *Quintanilla v. City of Downey, supra,* 84 F.3d at p. 354 [the plaintiff suffered dog bites on his arms and legs].) Moreover, the evidence adduced at trial showed that the dog was trained to release on command and did release appellant when commanded to do so. There was no evidence to suggest that the sheriff's deputies intended to use the dog in an improper manner or that the dog was improperly trained. (See *Robinette v. Barnes, supra,* 854 F.2d at p. 913.) Indeed, the evidence showed that the bulk of appellant's injuries occurred while appellant continued to fight the dog, despite the deputies' repeated requests to appellant to stop fighting the dog. In view of this evidence, there was no showing that the use of a trained police dog to locate appellant constituted deadly force and no basis for the giving of

jury instructions on deadly force. The trial court properly instructed the jury that it should evaluate the sheriff's deputies' conduct under the reasonableness standard applied to claims of excessive force.

II. *The Trial Court Properly Exercised Its Discretion in Refusing to Admit Two Reports As Evidence.*

Appellant next complains that the trial court abused its discretion in refusing to admit two reports—the Kolts Report and the *Avila* summaries. The trial court found that appellant failed to demonstrate that the reports fell within any exception to the hearsay rule, and further concluded that the *Avila* summaries were more prejudicial than probative under Evidence Code section 352. We review the trial court's determination as to the admissibility of evidence, including the application of exceptions to the hearsay rule, for an abuse of discretion. (E.g., *People v. Guerra* (2006) 37 Cal.4th 1067, 1113 [40 Cal.Rptr.3d 118, 129 P.3d 321]; *Dart Industries, Inc. v. Commercial Union Ins. Co.* (2002) 28 Cal.4th 1059, 1078 [124 Cal.Rptr.2d 142, 52 P.3d 79].) Under this standard, the trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10 [82 Cal.Rptr.2d 413, 971 P.2d 618].) We find no basis to disturb the trial court's rulings here.

A. *The Kolts Report Was Not an Authorized Admission of a Party Under Evidence Code Section 1222.*

In 1991, the Los Angeles County Board of Supervisors retained retired Judge Kolts as special counsel to review and make recommendations as to "the policies, practices and procedures of the Sheriff's Department, including recruitment, training, job performance and evaluation, record keeping and management practices, as they relate to allegations of excessive force, the community sensitivity of deputies and the Department's citizen complaint procedure." Pursuant to the terms of his contract, Judge Kolts was to provide both an interim and final report that would be disseminated to the public. According to Judge Kolts, "the report was intended to root out the causes of incidents of the applications of force by deputies which had already occurred and to recommend substantial reforms." In order to complete his report, Judge Kolts had access to attorney-client privileged information and other confidential records of the County and the sheriff's department. One chapter of the report specifically addressed the sheriff's department's canine unit.

Defendants moved in limine to exclude the Kolts Report. Effectively conceding that the report was hearsay, appellant opposed the motion on the ground that it constituted an authorized admission of a party under Evidence Code section 1222. The trial court determined that appellant failed to meet his burden to show that the Kolts Report was an authorized admission, reasoning: "The fact that the County hires someone to be a consultant as to making an analysis, an investigation, and let's say also making recommendations regarding a variety of police practices, including canine practices, doesn't make that person authorized to make an admission." Reiterating its conclusion, the trial court further stated: "He [Judge Kolts] is authorized to give us the results of his analysis and investigation, including recommendations to us, and to tell the public at the same time. That isn't the same as saying he is authorized to speak for us which is what an authorized admission is."

 "In general, hearsay evidence is inadmissible. Evidence Code section 1200 provides, in pertinent part: '(a) "Hearsay evidence" is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. [¶] (b) Except as provided by law, hearsay evidence is inadmissible.' " (*Correa v. Superior Court* (2002) 27 Cal.4th 444, 451 [117 Cal.Rptr.2d 27, 40 P.3d 739].) One exception to the hearsay rule is found in Evidence Code section 1222, which provides in part: "Evidence of a statement offered against a party is not made inadmissible by the hearsay rule if: [¶] (a) The statement was made by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement." *Snider v. Superior Court* (2003) 113 Cal.App.4th 1187, 1203 [7 Cal.Rptr.3d 119], explained that "[t]his has been interpreted in California as only applying to high-ranking organizational agents who have actual authority to speak on behalf of the organization. [Citation.]"

Here, the trial court properly exercised its discretion in determining that Judge Kolts—who was retained by the County as special counsel to perform a one-time investigation and report—did not have the authority contemplated by Evidence Code section 1222. There is no indication in the record that Judge Kolts occupied a high-ranking (albeit temporary) position in the County's hierarchy, nor is there any suggestion that the terms of his retention included his authorization to speak on the County's behalf. For these reasons, appellant's reliance on *O'Mary v. Mitsubishi Electronics America, Inc.* (1997) 59 Cal.App.4th 563 [69 Cal.Rptr.2d 389] is misplaced. There, the court found admissible a statement made by a company vice-president concerning the company's founder's desire to get rid of all employees over age 40. In reaching this conclusion, the court placed great weight on the fact that the

vice-president "occupied a particularly high place in the employer's hierarchy" and further explained that "[p]lace in an employer's hierarchy undoubtedly is important in determining authority to speak; the court in *Crawford v. County of Sacramento* [(1966)] 239 Cal.App.2d 791 [49 Cal.Rptr. 115] went so far as to quote from a 1964 Law Revision Commission Report which indicated that place in the employer's hierarchy was *the* 'differentiating factor' in California case law on authorized admissions. [Citations.]" (*O'Mary v. Mitsubishi Electronics America, Inc., supra,* at p. 572.) Moreover, because both the nature of the particular statement and the context within which it occurred were what an ordinary person would expect to be part of the vice-president's authority, the *O'Mary* court concluded that the statement was an authorized admission. (*Id.* at pp. 572–573.) In contrast, Judge Kolts held no position in the County's hierarchy and was not authorized to speak on the County's behalf. (See *Crawford v. County of Sacramento, supra,* 239 Cal.App.2d at pp. 800–801.)

 More fundamentally, appellant has not directed us to—nor have we located—any authority for the proposition that a special investigator's report constitutes an authorized admission of the entity or individuals under investigation. We find it significant that the Federal Rules of Evidence expressly provide for the admission of such investigative reports. Rule 803(8)(C) of the Federal Rules of Evidence creates a hearsay exception for "[r]ecords, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." (Fed. Rules Evid., rule 803(8)(C), 28 U.S.C.) This provision has no parallel in the California Evidence Code.[3] We are therefore guided by the well-established statutory canon that "we presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language. As our Supreme Court stated, 'we are aware of no authority that supports the notion of legislation by accident.' (*In re Christian S.* (1994) 7 Cal.4th 768, 776 [30 Cal.Rptr.2d 33, 872 P.2d 574].)" (*Jurcoane v. Superior Court* (2001) 93 Cal.App.4th 886, 894 [113 Cal.Rptr.2d 483].) For this reason, as well, we decline to construe Evidence Code section 1222 to provide for the admission of the Kolts Report. The trial court properly exercised its discretion in excluding the report.

---

[3] Appellant also relies on *In re Aircrash in Bali, Indonesia* (9th Cir. 1989) 871 F.2d 812, where the court affirmed the admission of an employee's report which detailed the defendant airline company's safety record and problems. Because the report was admitted pursuant to the Federal Rules of Evidence, however, the case has no application here. (*Id.* at p. 816.)

B. *The Avila Summaries Were Properly Excluded Under Evidence Code Section 352.*

The *Avila* summaries outlined medical treatment provided to 43 persons bitten by a sheriff's department dog used by a particular handler. Affirming a federal magistrate's ruling, United States District Court Judge Byrne ordered the County to prepare the summaries in a federal action as part of discovery that would be relevant to the plaintiff's claim under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018]. Once again, conceding the hearsay nature of the document, appellant sought admissibility of the *Avila* summaries under Evidence Code section 1220 as the admission of a party opponent and Evidence Code section 1280 as a business record. Defendants asserted that the *Avila* summaries were irrelevant because they involved the conduct of a sheriff's deputy who was not a defendant in this action, were inadmissible hearsay and were excludable under Evidence Code section 352 as unduly prejudicial and potentially confusing and misleading. In declining to admit the *Avila* summaries, the trial court found their admission would only serve to confuse the jury, noting that "it's a very big 352 issue." It further found that they did not qualify as an exception to the hearsay rule as a business record because they were prepared neither in the ordinary course and scope of a public employee's duties nor at or near the time of the events. (Evid. Code, § 1280.)

Pursuant to Evidence Code section 352, the trial court has discretion to exclude evidence "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) On appeal, appellant argues only that the *Avila* summaries were relevant. But "the trial court has broad discretion to exclude otherwise relevant evidence under Evidence Code section 352." (*Webber v. Inland Empire Investments, Inc.* (1999) 74 Cal.App.4th 884, 910 [88 Cal.Rptr.2d 594]; accord, *Mozzetti v. City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751].) Appellant fails to make any argument or cite to any authority that would suggest the trial court abused its discretion in balancing the relevance of the *Avila* summaries against the competing considerations outlined in Evidence Code section 352. We may therefore deem the issue waived. (E.g., *Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 1007 [27 Cal.Rptr.3d 583] [issue waived on appeal where appellants "fail[ed] to make a coherent argument or cite any authority to support their contention"]; see also Cal. Rules of Court, rule 14 (a)(1)(B) [each point in a brief must be supported by "argument and, if possible, by citation of authority"].)

In any event, we see no basis in the record to disturb the trial court's exercise of discretion, as any relevance the *Avila* summaries may have had was outweighed by the probability that the jury would be confused and misled by information concerning injuries caused by a dog handled by a sheriff's deputy who was not a part of this case. (See *Baker v. Beech Aircraft Corp.* (1979) 96 Cal.App.3d 321, 337–338 [157 Cal.Rptr. 779] [where a newspaper article contained unsubstantiated innuendos and referred to other litigated cases and verdicts in cases against the defendant aircraft manufacturer, the trial court in an action against the manufacturer as a result of an aircraft crash properly excluded the article under Evid. Code, § 352, as its probative value was outweighed by its prejudicial nature].) The trial court properly exercised its discretion in excluding the *Avila* summaries under Evidence Code section 352.[4]

### III. *There Is No Basis to Reinstate Appellant's Claim Under Civil Code Section 52.1.*

■ "Civil Code section 52.1, subdivision (a), provides that if a person interferes, or attempts to interfere, by threats, intimidation, or coercion, with the exercise or enjoyment of the constitutional or statutory rights of 'any individual or individuals,' the Attorney General, or any district or city attorney, may bring a civil action for equitable or injunctive relief. Subdivision (b) allows '[a]ny individual' so interfered with to sue for damages." (*Venegas v. County of Los Angeles* (2004) 32 Cal.4th 820, 841 [11 Cal.Rptr.3d 692, 87 P.3d 1] (*Venegas*).) In its entirety, appellant's third cause of action alleged: "Defendants' use of the dog against plaintiff subjects them to liability under California Civil Code Section 52.1(b). Defendant COUNTY OF LOS ANGELES is liable pursuant to Government Code § 815.2." Well before trial began, the trial court sustained the sheriff's department's demurrer without leave to amend and granted the County's and the individual defendants' motion for judgment on the pleadings as to this cause of action on the ground that appellant had not alleged that the sheriff's department's excessive force policies were motivated by a discriminatory animus. The trial court relied on

---

[4] Because we find that the trial court properly excluded the *Avila* summaries on the ground set forth above, we need not address the trial court's other ground for excluding the summaries. Moreover, appellant's contention as to why the *Avila* summaries fall within an exception to the hearsay rule suffers from the same deficiencies as his challenge to the trial court's ruling under Evidence Code section 352. Appellant has neither set forth an argument nor cited to any authority to demonstrate that the trial court abused its discretion in concluding that they were neither an admission (Evid. Code, § 1220) nor a business record (Evid. Code, § 1280). We may therefore treat those arguments as waived. (See, e.g., *Valov v. Department of Motor Vehicles* (2005) 132 Cal.App.4th 1113, 1132 [34 Cal.Rptr.3d 174] [contention waived where "assert[ed] in perfunctory fashion, without adequate supporting legal authority"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273] ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived"].)

*Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797, 1809 [35 Cal.Rptr.2d 282] (*Boccato*), which held that "an action brought under Civil Code section 52.1 must allege that the plaintiff who claims interference of his or her rights also allege that this interference was due to his or her 'race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute,' as set forth in [Civil Code] section 51.7."

■ Subsequently, the court in *Venegas, supra,* 32 Cal.4th 820, clarified that "in pursuing relief for those constitutional violations under [Civil Code] section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent . . . ." (*Id.* at p. 843.) The court noted that the Legislature responded to *Boccato* in 2000 by enacting "Assembly Bill [No.] 2719 . . . to explain that *Boccato* erred . . . and to clarify that Civil Code section 52.1 applies to an affected plaintiff 'without regard to his or her membership in a protected class identified by its race, color, religion, or sex, among other things.' (Stats. 2000, ch. 98, § 1.)" (*Id.* at p. 842.)

■ Appellant argues that the *Venegas* court's disapproval of *Boccato* requires that his third cause of action be reinstated. But absent reversal of the judgment, there is no factual basis for a claim under Civil Code section 52.1. The jury concluded that appellant's rights were not violated. Without any violation, there is no conduct upon which to base any claim under Civil Code section 52.1. (See *City of Simi Valley v. Superior Court* (2003) 111 Cal.App.4th 1077, 1085 [4 Cal.Rptr.3d 468] [where the plaintiff's "federal constitutional claims are subject to a res judicata bar and there is 'no conduct specified which constitutes a state constitutional violation, there is no conduct upon which to base a claim for liability under 52.1' "]; see also *Venegas, supra,* 32 Cal.4th at p. 843 [Civil Code "section 52.1 provides remedies for 'certain misconduct that interferes with' federal or state laws, if accompanied by threats, intimidation, or coercion"]; *City and County of San Francisco v. Ballard* (2006) 136 Cal.App.4th 381, 408 [39 Cal.Rptr.3d 1] [Civ. Code, § 52.1 "does 'require an attempted or completed act of interference with a legal right, accompanied by a form of coercion' "].)

Accordingly, absent any basis for reversal of the judgment, there is no basis for reinstatement of appellant's third cause of action alleging a violation of Civil Code section 52.1.[5]

---

[5] Because we find that there is no basis for reversing the judgment, we need not address the issues raised by defendants' protective cross-appeal.

## DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

Ashmann-Gerst, J., and Chavez, J., concurred.

A petition for a rehearing was denied September 13, 2006, and appellant's petition for review by the Supreme Court was denied November 15, 2006, S147068.