Filed 7/10/13  Olvera v. Giles CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHERI OLVERA,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>BRIAN GILES,<br><br>    Defendant and Respondent. | D060323<br><br><br><br>(Super. Ct. No. 37-2008-00096893-CU-CO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Jeffrey B. Barton, Judge.  Affirmed.

Herronlaw, Matthew V. Herron; Stephen M. Hogan; BarryFiske and Su L. Barry for Plaintiff and Appellant.

Law Office of James D. Scott and James D. Scott; McKenna Long & Aldridge and Charles A. Bird for Defendant and Respondent.

Appellant Cheri Olvera and respondent Brian Giles lived together from April 2003 to June 2008.  When the relationship ended, Olvera sued Giles for breach of contract,

seeking $10 million in damages, and for domestic violence, among other tort theories. Giles cross-complained for damages for domestic violence, for return of a diamond engagement ring he alleged was valued at almost $108,000 and for conversion of personal property.

After several days of trial, the jury returned a verdict awarding Giles the engagement ring and denying both parties all other relief. In so doing, the jury found that both Olvera and Giles "intentionally or recklessly" caused or attempted to cause bodily injury to each other, or to place the other "in reasonable apprehension of imminent serious bodily injury," but that neither Giles's nor Olvera's actions or conduct caused the other "to suffer injury, damage, loss or harm."

Olvera does not challenge, at least directly, any of the jury's findings. Instead, she attacks a single evidentiary ruling of the trial court, contending the court erred when, pursuant to Evidence Code[1] section 352, it excluded evidence regarding the source of a surveillance video played in part for the jury concerning an alleged domestic violence incident captured on the video involving her and Giles that took place in 2006 in a bar in Phoenix.

According to Olvera, because witnesses called by Giles testified that Olvera previously had told them she had a copy of a video that, if necessary, she would use against Giles, Olvera contends she should have been allowed to testify that she received a copy of the video from Arizona prosecutors with whom she refused to cooperate, who

_____

[1]     All statutory references are to the Evidence Code unless otherwise noted.

had charged Giles with misdemeanor domestic violence arising from the 2006 bar incident. Olvera further contends that if this evidence had been admitted, it would have rebutted Giles's argument that Olvera possessed the video in order to get money from him and would have led to a contrary finding that she was in fact harmed by Giles's acts of domestic violence.

As we explain, we reject Olvera's contentions and affirm the judgment.

A. *Brief Overview*

Giles was a professional baseball player. Giles and Olvera met in October 2001. At some point after they began dating, Olvera moved in with Giles while he played for the Pittsburgh Pirates. They lived together, including while Giles played in San Diego for the San Diego Padres, until June 2008 when Olvera moved back to Houston, Texas.

The record shows that Olvera and Giles accused each other of engaging in acts of domestic violence against the other. Olvera proffered testimony that during the course of their six-year relationship, Giles was abusive and controlling and would hit, grab, push and kick her. Olvera admitted that many times she and Giles would argue while they were drinking alcohol. Giles disputed this testimony and proffered his own testimony that particularly after she had been drinking, Olvera often started vulgar arguments with him in the presence of others and that Olvera hit, or threatened to hit, Giles and his friends and also threatened to end prematurely his professional baseball career by poking out his eye with the spike of her high heel shoe.

3

B. *The Bar Incident*

Of significance in this proceeding, in 2006 an incident occurred between Olvera and Giles in a bar in Phoenix, Arizona (the bar incident). Olvera testified the incident occurred on August 27 after Giles had played a day baseball game in Colorado. Olvera did not attend that game but instead met Giles in Phoenix where Giles was scheduled to play next. Olvera had a "few" alcoholic beverages while on the flight to Phoenix and another alcoholic beverage at the hotel bar while she waited for Giles to arrive. After dinner, they went to the bar where the incident occurred. The parties agree they argued while at the bar and were not getting along. Giles testified Olvera seemed a "little drunk" at the bar. Olvera instead claimed she was merely "tipsy."

At some point, Giles insisted they leave the bar. He paid the bill and turned to walk out. Olvera testified she believed they both needed some time to cool off and thus she decided to remain at the bar. Olvera testified Giles returned to the bar, grabbed her by the back of the neck and demanded she leave with him. At that point, Olvera got up and walked in front of Giles to leave the bar.

The parties dispute what happened next. Olvera testified that once they walked past some curtains toward the exit of the bar, Giles again grabbed her by the neck and pushed her to the ground. Giles, however, testified that when they went down a dark hallway and through the curtains to leave the bar, a stranger approached Giles and told him not to talk to the "lady" like that and that shortly thereafter Olvera fell to the ground because she was intoxicated and was wearing very high heels. The bar incident was

4

recorded by the bar's video surveillance camera, and a portion of it was admitted into evidence and played for the jury.

The Phoenix police investigated the bar incident, interviewed eyewitnesses and obtained the video surveillance of the incident. As a result of that investigation, Giles was charged with misdemeanor battery. Giles subsequently entered a plea of nolo contendere, or no contest, to the charge subject to his successfully completing an anger management course and his attending Alcoholics Anonymous (AA) meetings. When Giles completed these requirements, the case was dismissed.

## DISCUSSION

A. *Brief Additional Background*

Giles pretrial moved to exclude evidence of his nolo contendere plea arising from the bar incident, the police report of that incident and the video surveillance tape from the bar.[2] The court ruled to exclude under Penal Code section 1016, subdivision (3) any evidence of Giles's nolo contendere plea.[3] The court also conditionally ruled to exclude

---

[2] The record does not include Giles's motion in limine to exclude the surveillance video.

[3] Penal Code section 1016 provides in part: "There are six kinds of pleas to an indictment or an information, or to a complaint charging a misdemeanor or infraction: [¶] . . . [¶] 3. Nolo contendere, subject to the approval of the court. The court shall ascertain whether the defendant completely understands that a plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty. The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes. *In cases other than those punishable as felonies, the plea and any admissions required by the court during any inquiry it makes as to the voluntariness of, and factual basis for, the*

any reference to the anger management classes and AA meetings Giles attended and, unless Olvera could lay a foundation for its admission, to exclude the police report of the bar incident. However, as to the surveillance video, the court ruled it would conduct an Evidence Code section 402 hearing to determine whether Olvera also could lay a foundation for its admission into evidence.[4]

The record shows Olvera authenticated the surveillance video through the deposition testimony of a Phoenix city attorney who had been subpoenaed to testify. Olvera also testified regarding the events depicted on a portion of the surveillance video. The court ruled that three "clips" of the tape could be played at trial.

Immediately after Olvera finished testifying regarding the bar incident, the jury was shown the portion of the surveillance tape ruled admissible by the trial court. Using a "pointer," Olvera described for the jury what she believed the tape showed, including Giles pushing her to the ground after they had walked through the curtains toward the exit.

Giles subsequently called Denise Vierra as a witness. Vierra testified she and Giles's sister, Kamila Fraser, were best friends. Vierra testified that one evening in December 2006, she and her husband went to the home where Giles and Olvera were living and, at some point that night, Olvera got mad and threw an iPod and docking

_plea may not be used against the defendant as an admission in any civil suit based upon or growing out of the act upon which the criminal prosecution is based._" (Italics added.)

[4]    Section 402 provides in part: "(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article."

station that were playing music in the front of the house. When Giles responded that Olvera should leave, Vierra testified that Olvera "went after" Giles. Vierra intervened and grabbed Olvera's arm to keep her from Giles. Later that same evening, Vierra testified Olvera, who was still angry at Giles, claimed she had "something" on Giles "and that he [Giles] better not mess with her." Vierra testified that it was not until later that she actually saw the video of the bar incident.

Fraser also testified regarding this incident in December 2006. Fraser said Olvera became enraged because a "playlist" created by a friend of Giles allegedly had made Olvera jealous. When Olvera "went after" Giles, Fraser testified she and Vierra intervened, pulled Olvera aside and took her into the office area of the home. At that point, Olvera was "very upset" and "intoxicated" and started "badmouthing" Giles, saying she "hated him." It was during this "rant[]," according to Fraser, that Olvera said she "had a tape somewhere hidden in the home that if he [Giles] pushed her if she needed to she'd [Olvera] use it against him, and it would ruin him [Giles]." When Fraser asked Olvera to elaborate, Olvera declined other than to say there was an "incident" in Phoenix. Fraser testified this was the first time she had heard about a tape or an "incident" in Phoenix.

At the conclusion of Fraser's testimony, at a sidebar, Olvera asked the court to conduct a section 402 hearing on the issue of whether Olvera should be allowed to examine Fraser regarding her knowledge of the bar incident and, specifically, whether she then knew her brother had been charged for misdemeanor battery as a result.

7

Although the trial court had ruled to exclude evidence of Giles's criminal prosecution stemming from the bar incident, Olvera argued the court should revisit that ruling, given Fraser's testimony regarding Olvera's statements about the tape during the December 2006 incident, and allow her "to admit a portion of the criminal case as part of [her] case."

In the section 402 hearing, Fraser testified that at the time of the incident in December 2006 when Olvera during her "rant" mentioned a tape, Fraser did not know about the bar incident or that a misdemeanor complaint dated November 1, 2006—or any "official proceedings"—had been filed against her brother. Moreover, Fraser testified that when Olvera mentioned the tape that evening, Fraser did not even know what Olvera was talking about, and the only information she then had was the information provided by Olvera. Fraser stated that Olvera never said where she got the tape and, in fact, Fraser at that time was unsure whether the "tape" Olvera was talking about was an audiotape or a videotape.

Fraser testified she approached her brother about a week later, told him what Olvera had said the night they had all been together and asked him if any of it was true. According to Fraser, Giles then explained to her what had happened in Phoenix.

At the conclusion of the hearing, Olvera asked the court to admit into evidence the one-page misdemeanor complaint against Giles. The court denied that request, and Olvera excused Fraser as a witness.

Olvera subsequently revisited the issue of admitting the one-page misdemeanor complaint when she notified the trial court that she had used the wrong exhibit number in referring to the document. In response, the court stated it had not admitted the document, although it had taken judicial notice of it and had ruled to exclude the plea of nolo contendere pursuant to Penal Code section 1016, subdivision (3).

The record shows Olvera next asked the trial court to admit the one-page misdemeanor complaint to impeach Fraser's testimony regarding her lack of knowledge of the August 2006 bar incident at the time of the December 2006 incident, when Olvera first mentioned the tape and the "incident" in Phoenix:

"[Olvera's counsel]: Your Honor, and just -- we sort of did this in a rush yesterday with the witness [i.e., Fraser] and the [section] 402 [hearing], but what I -- I didn't say it then. [¶] What I meant to say was Ms. Fraser's testimony about the video discussion that occurred at Christmastime at that point in time when she testified she didn't know about this complaint against her brother is -- should -- that this document is now -- just the complaint, not [the] plea, but just the one-page complaint should be admitted for that purpose, and we should be able to argue that that testimony is not believable, given the fact that this case had been filed against her brother by then. [¶] . . . [¶]

"THE COURT: Okay. I think the [section] 402 hearing that we held regarding her testimony did allow the plaintiff to explore the issue. And I think her testimony that she was not aware of that until after Ms. Olvera made the statement and she talked to her brother right after or days after -- I can't remember exactly what she said -- would obviate

9

the need for the admission of that conviction record. It would also constitute impeachment on a collateral issue. [¶] So I think we'll leave it at that, unless there's something else.

"[Olvera's counsel]: Just on this topic, if we have a moment. It would be our intent with Ms. Olvera on rebuttal to ask her about this video, where it came from, when she got it, and for what purpose. And the testimony, the tenor of the testimony would be is that the prosecutor contacted her, provided the video, asked her to look at it, because she was reluctant in terms of cooperating as a witness in that proceeding. [¶] . . . Plaintiff believes . . . that Ms. Olvera should be able to explain what the video was and how she got it.

"THE COURT: Okay. Why doesn't each side give that some thought, and we'll show up at 8:45 on Monday, and we'll argue that further."

The record shows that when trial reconvened, Olvera argued she should be able to testify she received the video of the bar incident from a prosecutor because otherwise, "the jury's given a completely false impression about what this video was and that somehow Ms. Olvera had obtained something, maybe directly from the bar, to be used to attempt to extort Mr. Giles." In response, Giles argued the fact Olvera obtained the video from the prosecutor was "just remotely probative and certainly outweighed by the prejudicial effect." The trial court subsequently ruled during a sidebar conference that Olvera could not testify that she obtained the tape of the bar incident from a prosecutor at the same time it denied Giles's request to examine Olvera regarding a $1,500 check she

10

had written from Giles's bank account to a friend of hers that Giles claims was to purchase Vicodin.

B. *Governing Law and Standard of Review*

As noted *ante*, Olvera contends the trial court erred in excluding evidence regarding how she came into possession of the surveillance video from the bar. The record shows the court excluded this evidence under section 352, which in part states: "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

We review the trial court's decision to exclude evidence under section 352 under the abuse of discretion standard. (*Thompson v. County of Los Angeles* (2006) 142 Cal.App.4th 154, 168 (*Thompson*).) "Under this standard, the trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice. [Citation.]" (*Ibid.*)

"'If a proper objection under section 352 is raised, the record must affirmatively demonstrate that the trial court did in fact weigh prejudice against probative value. The trial court need not make findings or expressly recite its weighing process, or even expressly recite that it has weighed the factors, so long as the record as a whole shows the court understood and undertook its obligation to perform the weighing function.

11

[Citations.]' [Citation.]" (*Boeken v. Philip Morris Inc.* (2005) 127 Cal.App.4th 1640, 1685.)

A trial court has broad discretion to exclude under section 352 otherwise relevant evidence where its probative value is substantially outweighed by the probability that its introduction will create a substantial danger of undue prejudice. (§ 352; *Thompson*, *supra*, 142 Cal.App.4th at p. 171.) "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose." (*Vorse v. Sarasy* (1997) 53 Cal.App.4th 998, 1009.) In other words, evidence is unduly prejudicial where it has very little effect on the issues but uniquely tends to evoke an emotional bias against one party and thus poses an intolerable risk to the fairness of the proceedings. (*Ajaxo Inc. v. E\*Trade Group Inc.* (2005) 135 Cal.App.4th 21, 45; *Piscitelli v. Salesian Society* (2008) 166 Cal.App.4th 1, 11.)

C. *Analysis*

Although Olvera does not challenge directly the rulings of the trial court excluding from evidence Giles's nolo contendere plea to the misdemeanor battery charge arising from the bar incident, or the police report and one-page misdemeanor complaint filed against Giles in that incident, her contention the court erred when it refused to allow her

12

to testify she obtained the video of the bar incident from a prosecutor is tantamount to a challenge to those very rulings.

Indeed, the record shows that after Vierra and Fraser testified regarding the statements made by Olvera during her "rant" in December 2006 when Olvera threw the iPod and docking station, Olvera initially sought to introduce into evidence the one-page November 1, 2006 complaint charging Giles with misdemeanor battery. It was only after the trial court denied Olvera's multiple requests to admit the complaint that she sought to introduce her own testimony that the prosecutor in the bar incident gave her the surveillance video.

Assuming arguendo the source of the video was relevant evidence (Evid. Code, § 350), we conclude the trial court properly exercised its discretion under Evidence Code section 352 when it excluded Olvera's testimony about the source of the video, Giles's nolo contendere plea, the police report regarding the bar incident and the one-page complaint charging Giles with the misdemeanor crime, given the language of Penal Code section 1016, subdivision (3) and given the finding of the trial court—which we conclude is supported by substantial evidence—that the probative value of such evidence was substantially outweighed by the danger of undue prejudice. (See Evid. Code, § 352, subd. (b).)

Moreover, we separately conclude the trial court properly exercised its discretion in excluding this evidence as its admission likely would have necessitated an "undue consumption of time" as provided in section 352, subdivision (a), embroiling the jury in a

13

mini-trial on what was then a five-year-old misdemeanor matter.  Our conclusion is buttressed by the fact that at the time of the bar incident, Olvera refused to cooperate with law enforcement, a fact that gave rise to multiple inferences both favorable and unfavorable to Olvera, as noted by Giles, and by the fact that both parties engaged in myriad acts of domestic violence against each other—as found by the jury—throughout the course of their relationship.  (See *People v. Hamilton* (2009) 45 Cal.4th 863, 946 [noting that a trial court does not abuse its discretion in excluding under section 352 marginally relevant evidence in order "'to prevent . . .  trials from degenerating into nitpicking wars of attrition over collateral . . . issues'"].)

In addition, we note that it was Olvera—and not Giles—who played portions of the video for the jury and extensively relied on the video to support her domestic violence cause of action against Giles.  We further note Giles did not argue for any inference about how Olvera obtained the video and, in fact, the record shows Giles moved in limine to exclude altogether evidence of the video.  We thus conclude that when Olvera played portions of the video to the jury over the objection of Giles, she herself opened the door to the limited testimony of Vierra and Fraser regarding Olvera's statements in December 2006 about having "something" she could use against Giles if he displeased her.

We also reject Olvera's contention that evidence regarding the source of the video was admissible under section 356.[5]  This section provides:  "Where part of an act,

---

[5]     It does not appear from our independent review of the record that Olvera specifically raised this argument below, including when she moved for a new trial, judgment notwithstanding the verdict and/or an order setting aside the judgment.  (See generally *Broden v. Marin Humane Society* (1999) 70 Cal.App.4th 1212, 1226, fn. 13;

14

declaration, conversation, or writing is given in evidence by one party, the whole on the same subject may be inquired into by an adverse party; when a letter is read, the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

Courts have qualified Evidence Code section 356, and its precursor, Code of Civil Procedure section 1854, "to the extent that the court may in its discretion exclude those portions of a statement which in no way tend to explain the inconsistency between the admission of a party and [the proffered] testimony." (*Berg v. Sonen* (1964) 230 Cal.App.2d 434, 441 (*Berg*).)

Here, the testimony Olvera was not allowed to introduce—regarding the source of the video—did not explain any inconsistency involving the video evidence already admitted (see *Berg*, *supra*, 230 Cal.App.2d at p. 441); nor was it necessary to make her statements from the December 2006 incident "understood" for purposes of section 356.

The same is true with respect to the testimony of Vierra and Fraser. As to Vierra, she did not even mention the video in her testimony, instead stating that Olvera made statements in December 2006 that she had "something" on Giles and that he better not "mess" with her, or words to that effect.

and *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564 [noting the failure to raise specific challenges in the trial court results in a forfeiture of the claim on appeal].) In any event, despite submitting lengthy briefing on a variety of other issues, Giles did not raise forfeiture as an issue on appeal and thus we will address the merits of whether the trial court should have admitted evidence of the source of the video pursuant to section 356.

As to Fraser, the record shows the court conducted a hearing pursuant to section 402 and, based on Fraser's testimony, was satisfied that when Olvera told Fraser in December 2006 that she had some sort of tape and would use it if necessary against her brother, Giles, Fraser then did not know about the bar incident or the surveillance video. We thus conclude there was no error under section 356 when Olvera was precluded from giving testimony regarding the source of the video of the bar incident.  (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1035 [noting that the remainder of an item of evidence is admissible under § 356 "'if it has "'some bearing upon, or connection with, the admission or declaration in evidence,'"'" but also noting that in such circumstances, "admission of the rest of a statement is limited to those parts relevant to or necessary for an understanding of the part already admitted"].)

Finally, for the reasons given *ante*, we reject Olvera's contention that even without section 356 she should have been able to testify regarding the source of the video of the bar incident to explain her "own conduct" concerning the video.  In support of her contention, Olvera relies on *Brooks v. E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669 (*Brooks*).

Briefly, in *Brooks*, the court ruled the trial court did not err when it instructed the jury that an employee's decision to drive away from the scene of an accident might be considered as a circumstance showing "consciousness of responsibility" on the employee's part for the accident and death of a pedestrian.  (*Brooks*, *supra*, 40 Cal.2d at p. 676.)  In affirming this instruction, the court noted that the failure to stop and render

16

aid supported an inference of responsibility and noted this inference "of course, may be refuted, and a defendant is entitled to explain his [or her] conduct." (*Ibid.*) The court further noted that the trial court had erred when it refused to allow the employee to explain why he did not stop and render aid after he hit the victim but that no prejudice resulted from the error because that evidence was developed elsewhere and because the defendant employer's own attorney acquiesced in the trial court's ruling. (*Ibid.*)

Here, Olvera does not challenge any of the jury instructions or the inferences to be drawn from those instructions, unlike the defendant in *Brooks*. For this reason alone, we find *Brooks* inapposite. Moreover, unlike the employee in *Brooks* who was erroneously precluded by the trial court from explaining why he did what he did, in the instant case Olvera was not precluded from testifying regarding the statements she made to Vierra and Fraser during her "rant" in December 2006, including, by way of example only, that she did not make those statements, or if she did, what she meant by them.[6]

Because, as noted *ante*, the trial court properly exercised its discretion in excluding Olvera's testimony regarding the source of the video of the bar incident

---

[6] Olvera also briefly cites to *People v. Yeaton* (1888) 75 Cal. 415 to support her contention she should have been allowed to testify to the source of the bar incident video in order to explain her own conduct in connection with that incident. In *Yeaton*, a letter written by a 15-year-old defendant admitting guilt was introduced, but neither she nor other witnesses, including her mother, were allowed to give testimony concerning the defendant's jailhouse statements she was innocent at the time she was induced to write the letter. The court held that this was error. Clearly, *Yeaton* is factually distinguishable from the instant case. In any event, unlike the situation in *Yeaton*, here the trial court *properly* ruled to exclude what was otherwise inadmissible evidence—the source of the video of the bar incident—as discussed, *ante*. We thus conclude *Yeaton* in no way supports Olvera's position on this issue.

pursuant to section 352, and because Olvera in any event was not prohibited from testifying concerning the December 2006 incident and the various statements attributed to her stemming from that incident, we conclude for these separate reasons that *Brooks* does not apply here.[7]

DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Giles.


BENKE, J.

WE CONCUR:


McCONNELL, P. J.


McDONALD, J.

---

[7]    Given our decision, we deem it unnecessary to reach Giles's contention that even if the trial court erred in excluding the evidence regarding the source of the video, that error was harmless as its exclusion had no bearing on the finding of the jury that Olvera suffered no "injury, damage, loss or harm" in connection with her domestic violence cause of action.