[No. B091890. Second Dist., Div. Two. Aug. 15, 1996.]

SAMUEL SILVA, JR., et al., Plaintiffs and Appellants, v.
SHERMAN BLOCK, as Sherifff, etc., et al., Defendants and Respondents.

## COUNSEL

Litt & Marquez, Barrett S. Litt and Kathryn K. Imahara for Plaintiffs and Appellants.

De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Roger H. Granbo, Deputy County Counsel, Manning, Marder & Wolfe, Robert S. Wolfe and Eugene P. Ramirez for Defendants and Respondents.

## OPINION

**ZEBROWSKI, J.**—Plaintiffs appeal from an order sustaining demurrers to class action allegations in their action against Los Angeles County (County), Sheriff Sherman Block, and certain other members of the Los Angeles County Sheriff's Department (the Sheriff's Department). Plaintiffs allege that the Sheriff's Department utilized a policy that resulted in suspects being "routinely bitten" by police dogs whether or not they posed a threat of violence. Plaintiffs contend the trial court erred procedurally in failing to conduct an evidentiary hearing before dismissing the class action allegations and substantively in determining that the case is not suitable for class action treatment.

### I. PROCEDURAL BACKGROUND

Two representative plaintiffs, Samuel Silva, Jr., and Rudy Becerra, filed the original class action complaint in October 1991. They alleged they represented a class consisting of people wrongly and unjustifiably attacked by police dogs used by the Sheriff's Department. They also sought to represent a minority subclass comprised of all individuals belonging to racial minorities who had suffered such attacks.

Defendants demurred to the class action allegations of the complaint. They contended there were insufficient common questions of law and fact between the two alleged class plaintiffs and that neither Silva nor Becerra was an appropriate class representative because each had alleged that he had been involved in a violent, serious crime justifying deployment of police dogs to search and apprehend him. The trial court sustained the demurrers with leave to amend. It noted that neither Silva nor Becerra was an appropriate representative of a class of persons who had engaged in misdemeanors or nonviolent felonies, and allowed plaintiffs leave to conduct discovery and to amend the complaint.

Plaintiffs filed their amended complaint in June 1994, adding 10 new individuals as representative plaintiffs for the class. They deleted the specific allegations regarding the deployment of police dogs, and alleged as to each representative plaintiff, including Silva and Becerra, that "the deputies did

not have probable cause or reasonable suspicion that [the plaintiff] presented an immediate and credible threat of serious injury or death, or otherwise posed a threat justifying a dog attack." Defendants again demurred on numerous grounds, including that the claims were not suited to class disposition and that the named plaintiffs were not appropriate class representatives either because they had already brought actions against the County for virtually the same claims or in their individual cases the canine handler had probable cause to deploy the police dog.

At the demurrer hearing, plaintiffs' counsel admitted that they had been unable to discover any new class members beyond the 1990 to 1992 time frame. Counsel attributed the lack of additional plaintiffs to a change in policy in the Sheriff's Department. The trial court sustained the demurrers, finding that individual issues predominated, that plaintiffs had been unable to produce a representative plaintiff, and that plaintiffs had "conceded at the hearing that the Department's canine policy now conforms to accepted practice." It permitted plaintiffs with preexisting individual actions to proceed with such actions and gave the remaining plaintiffs 30 days leave to amend their individual claims.

## II. Discussion

### 1. *The trial court properly determined the class issues on demurrer.*

Contrary to plaintiffs' position, trial courts properly and "routinely decide[] the issue of class certification on demurrer, sustaining demurrers without leave to amend where it is clear that there is no reasonable possibility that the plaintiffs could establish a community of interest among the potential class members and that individual issues predominate over common questions of law and fact. [Citations.]" (*Clausing* v. *San Francisco Unified School Dist.* (1990) 221 Cal.App.3d 1224, 1234 [271 Cal.Rptr. 72].) Since the complaint failed to allege facts sufficient to establish the elements necessary for maintenance of a class action, it was not error for the court to dispose of the matter on demurrer.

When a demurrer is sustained without leave to amend, the burden of proving a reasonable possibility that the defect can be cured by amendment is on the plaintiff. (*Kennedy* v. *Baxter Healthcare Corp.* (1996) 43 Cal.App.4th 799, 808 [50 Cal.Rptr.2d 736].) In the present case, after sustaining demurrers to the original complaint, the trial court allowed plaintiffs approximately two and one-half years to conduct discovery and to

amend their complaint. Despite that generous allowance, plaintiffs were unable to plead a community of interest among the potential class members and that common questions of law and fact predominate over individual issues. Plaintiffs have failed to carry their burden of showing the trial court abused its discretion in denying leave to amend.

## 2. *The trial court's determination of the class issue was proper.*

■ In reviewing an order sustaining a demurrer, we treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions, or conclusions of fact or law, and consider matters which may be judicially noticed, giving the complaint a reasonable interpretation in determining whether it states facts sufficient to constitute a cause of action. (*Kennedy* v. *Baxter Healthcare Corp.*, *supra*, 43 Cal.App.4th 799, 807.) We must affirm if the trial court's decision to sustain the demurrer was correct on any theory. (*Kennedy* v. *Baxter Healthcare Corp.*, *supra*, 43 Cal.App.4th 799, 808.)

■ Where the issue resolved on demurrer is whether an action should proceed as a class action, the trial court must determine whether "there is a 'reasonable possibility' plaintiffs can plead a prima facie community of interest among class members . . . ." (*Brown* v. *Regents of University of California* (1984) 151 Cal.App.3d 982, 988 [198 Cal.Rptr. 916].) " 'The ultimate question in every case of this type is whether, given an ascertainable class, the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' [Citations.] If the ability of each member of the class to recover clearly depends on a separate set of facts applicable only to him, then all of the policy considerations which justify class actions equally compel the dismissal of such inappropriate actions at the pleading stage." (*Brown* v. *Regents of University of California*, *supra*, 151 Cal.App.3d 982, 989.)

Citing *Pinnacle Holdings, Inc.* v. *Simon* (1995) 31 Cal.App.4th 1430, 1434 [37 Cal.Rptr.2d 778], plaintiffs contend that we must review the demurrer ruling de novo. Respondents take the position that the standard for review of denial of class certification, abuse of discretion (see *Caro* v. *Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 655 [22 Cal.Rptr.2d 419]), should be applied in this case. We need not reach this issue, since under either standard our decision would be the same.

■ Maintenance of a class action requires "the existence of an ascertainable class and a well-defined community of interest among the class

members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)

█ The trial court based its rejection of class action treatment upon plaintiffs' failure to show that common questions of law or fact predominated and upon their failure to name representative plaintiffs. In addition, it stated that if, as plaintiffs admitted, the alleged policy of excessive force was no longer in effect, there would be no prophylactic purpose in maintaining the action as a class action. The trial court stated, "[T]hese procedures have, in your words, radically changed—the policy has radically changed, and we've—we've reached the—you've reached the goal you sought. And your plaintiffs can proceed with their lawsuit on their individual claims . . . ."

We agree with the trial court that issues requiring separate adjudication predominate over common questions. █ "[T]he community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining [the member's] individual right to recover following the 'class judgment' determining issues common to the purported class. [Citation.]" (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223].) "[T]he issues which may be jointly tried, when compared with those requiring separate adjudication, must be sufficiently numerous and substantial to make the class action advantageous to the judicial process and to the litigants. [Citation.]" (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 460.)

█ Plaintiffs' excessive force allegations are based upon the propriety of the use of police dogs by different handlers in separate incidents. The reasonableness of a particular use of force is judged by examining the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." (*Graham* v. *Connor* (1989) 490 U.S. 386, 396 [104 L.Ed.2d 443, 455, 109 S.Ct. 1865]; and see *Quintanilla* v. *City of Downey* (9th Cir. 1996) 84 F.3d 353 [actions of officers in releasing dog did not constitute deadly force]; *Fikes* v. *Cleghorn* (9th Cir. 1995) 47 F.3d 1011 [same]; *Chew* v. *Gates* (9th Cir. 1994) 27 F.3d 1432 [plurality reversed the grant of summary judgment in the case of a plaintiff who had suffered severe dog bite wounds, finding questions of fact regarding whether the use of a police

dog constituted excessive force (Reinhardt, J.) or use of deadly force (Norris, J.)].)

Even if plaintiffs could prove what it identified as its common issue, that the County had once had a policy authorizing the use of excessive force, it would still have to show that each individual plaintiff had suffered a constitutional injury. (*Quintanilla* v. *City of Downey*, *supra*, 84 F.3d 353.) The question of liability to individual class members would depend upon the particular conduct in which the suspect was engaged and the facts apparent to the handler before the police dog was employed. (See *People* v. *Rivera* (1992) 8 Cal.App.4th 1000 [10 Cal.Rptr.2d 785] [officer acted reasonably in ordering police dog to search, bite and hold a fleeing burglary suspect thought to be armed]; *Mendoza* v. *Block* (9th Cir. 1994) 27 F.3d 1357 [deployment of police dog was objectively reasonable where suspect was fleeing arrest for bank robbery, deputies believed he was armed, suspect did not surrender when warned he would be bitten if he did not come out of the bushes, and the suspect was hiding on private property].) In addition to liability, damages would also be subject to a case-by-case determination. (See *City of San Jose* v. *Superior Court*, *supra*, 12 Cal.3d 447, 459, 461-462 [individual issues predominate where proposed class comprised homeowners in airport flight pattern]; *Clausing* v. *San Francisco Unified School Dist.*, *supra*, 221 Cal.App.3d 1224, 1234 [same, handicapped students subjected to abusive treatment]; *Rose* v. *Medtronics, Inc.* (1980) 107 Cal.App.3d 150, 156-157 [166 Cal.Rptr. 16] [same, recipients of defective pacemakers].) Plaintiffs have not shown grounds for reversal.

The trial court also found that "[n]otwithstanding ample time and opportunity granted them, counsel have been unable to dig up a single representative plaintiff." Plaintiffs characterize this ruling as the trial court's erroneously requiring them to name the class members prior to class certification, urging that the trial court misunderstood the representative nature of class actions. Respondents assert that the trial court found that none of the representative plaintiffs was an individual who had not committed any serious criminal activity and who posed no reasonable threat of violence. We conclude the trial court engaged in a proper inquiry concerning the adequacy of plaintiffs' pleading. Moreover, whether the policy was still in existence would bear on the size of the proposed class and the benefit to be derived from a class action proceeding. (See *Caro* v. *Procter & Gamble Co.*, *supra*, 18 Cal.App.4th 644, 657-660.)

The order appealed from is affirmed.

Boren, P. J., and Fukuto, J., concurred.