Filed 2/6/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHELLE SHAEFFER, | B291085 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC654207) |
| v. | |
| CALIFIA FARMS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ann I. Jones, Judge. Affirmed.

Capstone Law, Ryan H. Wu, and Robert K. Friedl for Plaintiff and Appellant.

Sheppard Mullin Richter & Hampton, and Sascha Henry for Defendant and Respondent.

\* \* \* \* \* \*

California's Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), false advertising law (*id.*, § 17500 et seq.), and Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1770 et seq.), among other things, prohibit advertisements—including product labels—with statements that are """"likely to . . . deceive"""" """"members of the public."""" (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 951 (*Kasky*); *Consumer Advocates v. Echostar Satellite Corp.* (2003) 113 Cal.App.4th 1351, 1360 (*Consumer Advocates*).) This case presents the question: Where a product label accurately states that the product has "no sugar added," is a reasonable consumer likely to view that statement as a representation that competing products *do* have sugar added, which, if untrue, renders the product label at issue deceptive? We conclude that the answer is "no," and do so as a matter of law. Because the allegations underlying plaintiff's remaining claims are also deficient, we affirm the trial court's order sustaining a demurrer without leave to amend.

## FACTS AND PROCEDURAL BACKGROUND

### I. Facts[1]

Califia Farms, LLC (Califia) manufactures and distributes a "100% Tangerine Juice" known as "Cuties Juice." The front label of the juice's bottle depicts a smiling tangerine coming out of its peel. Above the tangerine, the label prominently displays the word "Cuties"; below the tangerine and on three lines of

---

[1] We draw the facts set forth below from the allegations in the operative, second amended complaint, which we assume to be true for purposes of evaluating the demurrer on appeal before us now. (*Coker v. JPMorgan Chase Bank, N.A.* (2016) 62 Cal.4th 667, 671.)

increasing smaller text, the label reads "100% Tangerine Juice," "No Sugar Added," and "Never From Concentrate."

Michelle Shaeffer (plaintiff) bought a bottle of Cuties Juice in a supermarket in Merced, California. She selected Cuties Juice because "her children enjoy eating fresh tangerines," and she did so over "other, similar tangerine juices" because its label "stated 'No Sugar Added'" and because "she is diabetic."

## II. Procedural Background

### A. *The operative complaint*

Plaintiff brought suit in March 2017.

In the operative, second amended complaint,[2] plaintiff alleges that the label on the Cuties Juice violates the Unfair Competition Law (Bus. & Prof., § 17200 et seq.), the false advertising law (*id.*, § 17500 et seq.), and the CLRA (Civ. Code, § 1770 et seq.). She seeks to certify a class of "all persons in the United States who purchased one or more containers of Cuties 100% Tangerine Juice with the phrase 'No Sugar Added' on its label or outer packaging."

Plaintiff alleges that the Cuties Juice label is fraudulent. Despite the "literal[] tru[th]" of the label's statement that Cuties Juice has "No Sugar Added," plaintiff alleges it is nevertheless fraudulent because it is "likely to deceive reasonable consumers *in its implications*." (Italics added.) In particular, plaintiff alleges that the "No Sugar Added" statement on the Cuties Juice

---

[2] The trial court sustained a demurrer to plaintiff's original complaint, and the parties stipulated that she could file a second amended complaint to supersede the first amended complaint. The original complaint did not name Califia as a defendant; plaintiff substituted Califia for a fictitiously named defendant, and then dismissed the originally named defendants.

3

label implies that (1) "competing brands" *do* "contain added sugar[]," such that Cuties Juice "contain[s] less sugar than competing brands that did not have sugar-content claims on their front labels," and (2) Cuties Juice is therefore "different and healthier than . . . competing brands of tangerine juice." Because the competing brands do *not* contain added sugar, plaintiff goes on to allege, the Cuties Juice label constitutes (1) a "fraudulent" business practice under the Unfair Competition Law, (2) an "untrue or misleading" advertisement under the false advertising law, and (3) an "unfair method[] of competition" under the CLRA because the label misrepresents the "characteristics" of Cuties Juice (under subdivision (a)(5) of Civil Code section 1770), misrepresents its "particular standard" or "quality" (under subdivision (a)(7)), and "advertise[s]" the Juice "with the intent not to sell it as advertised" (under subdivision (a)(9)).

Plaintiff alleges that the Cuties Juice label is also "unlawful" under the Unfair Competition Law because it does not comply with two of the five prerequisites that must be satisfied before a label may state "no sugar added" under a federal labeling regulation (21 C.F.R. § 101.60(c)(2)). In particular, plaintiff alleges that the Cuties Juice label did not comply with the federal regulation because (1) "the [product] that [Cuties Juice] resembles and for which it substitutes"—that is, "100% tangerine juice"—does not "normally contain added sugars," and (2) the label does not also "bear[] a statement that it is not 'low calorie' or 'calorie reduced'" and does not "direct[] consumers' attention to the [product's] nutrition panel."

**B.** *Califia's demurrer*

Califia demurred to the second amended complaint on the ground that (1) the Cuties Juice label was not "fraudulent"

4

because no reasonable consumer was likely to be deceived by the "No Sugar Added" language, (2) plaintiff did not adequately allege a violation of the CLRA, and (3) plaintiff lacked standing.

After briefing and a hearing, the trial court issued a five-page ruling sustaining the demurrer without leave to amend. The court ruled that the inclusion of "No Sugar Added" on the Cuties Juice label was not "fraudulent" or a misrepresentation. Analogizing this case to *Rubenstein v. The Gap, Inc.* (2017) 14 Cal.App.5th 870 (*Rubenstein*), the court reasoned that "[t]he 'No Sugar Added' statement on the Cuties Juice makes no representation other than the truthful fact that Cuties juice has no sugar added" and that the representations plaintiff alleges are *implied* by the "No Sugar Added" statement are "nowhere to be found on the label" and "unreasonabl[e]." The court further ruled that the Cuties Juice label did not violate the federal regulation because (1) the product Cuties Juice "resembles" and "substitutes for" is "all fruit juices," some of which "normally contain added sugars," and (2) plaintiff "cannot show that she relied on" the label's failure to "include . . . 'low calorie' or 'calorie reduced'" because her purchase decision had nothing to do with calorie content. The court finally ruled that plaintiff lacked standing to pursue any of her claims because she "cannot allege detrimental reliance" on the "No Sugar Added" verbiage on the label because her decision to buy Cuties Juice rested instead on her "own unreasonable inference from the 'No Sugar Added' statement that . . . Cuties [J]uice was healthier than competing brands of tangerine juice."

Following the entry of judgment dismissing the case, plaintiff filed this timely appeal.

5

## DISCUSSION

Plaintiff argues that the trial court erred in sustaining Califia's demurrer without leave to amend. In reviewing this argument, we ask two questions: (1) Was the demurrer properly sustained; and (2) Was leave to amend properly denied? "The first question requires us to independently ""determine whether the [operative] complaint states facts sufficient to constitute a cause of action."""" (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1335 (*Schep*), quoting *Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010; *Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230.) To properly state a cause of action, and as pertinent here, the operative complaint must sufficiently allege (1) "every element of [that] cause of action" and (2) the plaintiff's standing to sue. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1490-1491; *Peterson v. Cellco Partnership* (2008) 164 Cal.App.4th 1583, 1589.) In undertaking this review, "[w]e must take [the operative complaint's] allegations . . . as true" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*)), but may "not assume the truth of [any alleged] contentions, deductions or conclusions of law" because "appellate courts must independently decide questions of law" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1242 (*Gutierrez*)). "The second question 'requires us to decide whether ""there is a reasonable possibility that the defect [in the operative complaint] can be cured by amendment.""" (*Schep*, at p. 1335, quoting *McClain v. Sav-On Drugs* (2017) 9 Cal.App.5th 684, 695, affirmed, 6 Cal.5th 951 (2019).)

6

# I. Was the Demurrer Properly Sustained?

## A. *Applicable law*

### 1. *Causes of action and their elements*

#### a. Unfair Competition Law

As its name suggests, California's Unfair Competition Law bars "unfair competition" and defines the term as a "business act or practice" that is (1) "fraudulent," (2) "unlawful," or (3) "unfair." (Bus. & Prof. Code, § 17200; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 (*Cel-Tech*).) Each is its own independent ground for liability under the Unfair Competition Law (*Aryeh*, *supra*, 55 Cal.4th at p. 1196 [noting independent "prong[s]"), but their unifying and underlying purpose "is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services" (*Kasky*, *supra*, 27 Cal.4th at p. 949).

##### (i) "Fraudulent" business act or practice

To prevail on a claim under the fraudulent prong of the Unfair Competition Law "based on false advertising or promotional practices," the plaintiff must "'show that "members of the public are likely to be deceived."'" (*Kasky*, *supra*, 27 Cal.4th at p. 951, quoting *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 (*Committee on Children's Television*), superseded by statute on other grounds as stated in *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242; *In re Tobacco II Cases* (2009) 46 Cal.4th 298, 312 (*Tobacco II*).) An advertisement or promotional practice is likely to deceive if it includes assertions that are (1) untrue, or (2) "'true[, but] are either actually misleading or which [have] the capacity, likelihood or tendency to deceive or confuse the public.' [Citation]." (*Kasky*, at p. 951; *Leoni v. State Bar* (1985) 39 Cal.3d

7

609, 626 (*Leoni*).) By focusing on whether "members of the public" are likely to be deceived, the Unfair Competition Law views the challenged ad or promotional practice through the eyes of the "reasonable consumer"—that is, the "ordinary consumer acting reasonably under the circumstances"—unless the advertisement or practice is "aimed at a particularly susceptible audience." (*Lavie v. Proctor & Gamble Co.* (2003) 105 Cal.App.4th 496, 506-507, 512 (*Lavie*); *Freeman v. Time, Inc.* (9th Cir. 1995) 68 F.3d 285, 289; see also *Lavie*, at p. 504 [rejecting a "'least sophisticated consumer standard'"].) This focus on the "reasonable consumer"—rather than *any particular consumer*—means that an ad or practice may be "fraudulent" even without any "'individualized proof of deception, reliance and injury.' [Citation]." (*Tobacco II*, at p. 326; see also *id.* at p. 320.)

         (ii) "Unlawful" business act or practice

  To prevail on a claim under the unlawful prong of the Unfair Competition Law, the plaintiff must show that a challenged advertisement or practice violates any federal or California "statute or regulation." (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1265; *Ayreh*, *supra*, 55 Cal.4th at p. 1196; *Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 394.)

     b. False advertising law

  Also as its name suggests, California's false advertising law bars "any advertising device . . . which is untrue or misleading." (Bus. & Prof. Code, § 17500.) Because this law and the fraudulent prong of the Unfair Competition Law substantively overlap (*Kasky*, *supra*, 27 Cal.4th at p. 950; *Committee on Children's Television*, *supra*, 35 Cal.3d at p. 210; *Tobacco II*, *supra*, 46 Cal.4th at p. 312, fn. 8), the plaintiff's burden under these provisions is the same: To prevail on a claim under the

false advertising law, she must show that "'"members of the public are likely to be deceived."'" [Citation]" (*Kasky*, at p. 951) and must do so as adjudged through the eyes of "the reasonable consumer" (*Consumer Advocates*, *supra*, 113 Cal.App.4th at p. 1360).

### c.     CLRA

The CLRA defines 27 "unfair methods of competition and unfair or deceptive acts or practices." (Civ. Code, § 1770.) As pertinent here, they include (1) "[r]epresenting that goods . . . have . . . characteristics [or] . . . benefits . . . that they do not have" (*id.*, subd. (a)(5)), (2) "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another" (*id.*, subd. (a)(7)), and (3) "[a]dvertising goods . . . with intent not to sell them as advertised" (*id.*, subd. (a)(9)). The CLRA also views representations through the eyes of "the reasonable consumer." (*Consumer Advocates*, *supra*, 113 Cal.App.4th at p. 1360; *Hill v. Roll Internat. Corp.* (2011) 195 Cal.App.4th 1295, 1304 (*Hill*).) An actionable "representation" may be (1) an affirmative representation, or (2) an omission "if the omitted fact is ([a]) 'contrary to a [material] representation actually made by the defendant' or ([b]) is 'a fact the defendant was obliged to disclose.'" (*Gutierrez*, *supra*, 19 Cal.App.5th at p. 1258, quoting *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 835.)

### 2.     *Standing*

A person has standing to bring a claim under the Unfair Competition Law, the false advertising law, or the CLRA only if she establishes that (1) she "has suffered" "economic injury" or "damage," and (2) this injury or damage "was the result of, i.e., *caused by*," the unfair business practice, false advertising or the

9

CLRA violation "that is the gravamen of [her] claim." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 322, 326 (*Kwikset*); *Veera v. Banana Republic, LLC* (2016) 6 Cal.App.5th 907, 916 ["the standing requirements of the CLRA are essentially identical to those of the [Unfair Competition Law] and the [false advertising law]"]; *Hinojos v. Kohl's Corp.* (9th Cir. 2013) 718 F.3d 1098, 1108 [same].) To prove the second element of causation, the plaintiff must show that she "actual[ly] reli[ed]" on the "allegedly deceptive or misleading statement" and that it "was an immediate cause" of her injury. (*Kwikset*, at pp. 326-327.) Because, as noted above, a particular statement may be "fraudulent" to a "reasonable consumer" without "'individualized proof of deception, reliance, and injury,'" the showing of actual reliance necessary to establish a *plaintiff's* standing is different and, more to the point, more demanding. (*Tobacco II*, *supra*, 46 Cal.4th at p. 326; see also *id.* at p. 306 ["standing requirements are applicable only to the [plaintiff-]class representatives"].)

**B.** *Analysis*

Due to the substantial overlap among plaintiff's claims under the Unfair Competition Law, the false advertising law and the CLRA, the propriety of the trial court's order sustaining the demurrer in this case ends up turning on three questions: (1) Is the "No Sugar Added" language on the Cuties Juice label likely to deceive the reasonable consumer?; (2) Is Califia's use of the "No Sugar Added" language unlawful?; and (3) Does plaintiff allege facts sufficient to grant her standing to bring these claims?

1. *Is the "No Sugar Added" language on the Cuties Juice label likely to deceive the reasonable consumer?*

As our Supreme Court has observed, "labels matter." (*Kwikset*, *supra*, 51 Cal.4th at p. 328.) However, and as noted above, only those statements on a label that are "likely to

10

deceive" a "reasonable consumer" are actionable under the Unfair Competition Law, the false advertising law and the CLRA. (*Kasky*, *supra*, 27 Cal.4th at p. 951; *Consumer Advocates*, *supra*, 113 Cal.App.4th at p. 1360.)

At one end of the spectrum are statements a business affirmatively makes about its product on its label that are untrue. (*Leoni*, *supra*, 39 Cal.3d at 626.) Such affirmative misrepresentations are, by definition, "fraudulent" and "false." Thus, a label stating that a lock was "Made in [the] U.S.A." when it was not is actionable. (E.g., *Kwikset*, *supra*, 51 Cal.4th at pp. 327-330.)

Next along the spectrum are statements a business affirmatively makes about its product on its product's label that are "literally true, [but] nevertheless deceptive and misleading *in [their] implications*." (*People v. Wahl* (1940) 39 Cal.App.2d Supp. 771, 773 (*Wahl*), italics added; *Abbott Laboratories v. Mead Johnson & Co.* (7th Cir. 1992) 971 F.2d 6, 13 (*Abbott Laboratories*) ["statements which, while literally true or ambiguous, convey a false impression or are misleading in context, as demonstrated by actual consumer confusion" are actionable].) However, an implied representation is actionable only if a reasonable consumer is likely to infer that representation from the label's affirmative content. Thus, a label on a "Fruit Juice Snacks" package depicting "images of fruits such as oranges, peaches, strawberries, and cherries" but actually containing only "white grape juice from concentrate," while technically true because the snacks do contain the juice of a fruit, is nonetheless actionable because a reasonable consumer would be likely to infer from the label that the snacks contain the fruits prominently depicted on the label. (*Williams v. Gerber Prod. Co.*

11

(9th Cir. 2008) 552 F.3d 934, 936, 939; see also *Gutierrez, supra*, 19 Cal.App.5th at pp. 1240, 1258-1260 [statement that a used car had "passed a rigorous 125-Point Quality Inspection" and listing all 125 points but omitting an outstanding recall for one of the car's components; actionable].) Conversely, a brand label for "The Gap" and "Banana Republic" affixed to clothing sold by these clothiers in their discount stores does *not* imply that these clothing items had at one time been available for sale in the clothiers' full-price, retail stores, and hence does not imply that these clothes are of the same quality, because a reasonable consumer is not likely to draw that inference. (*Rubenstein, supra*, 14 Cal.App.5th at pp. 874, 876-877.)

Further down the spectrum are statements a business affirmatively makes—not about its product—but about comparable, competing products that are false and that imply that the product at issue is superior to its competition. This would apply, for example, if the Cuties Juice label had stated "*The Only One with* No Sugar Added" because it would have affirmatively and effectively stated that all other tangerine juices added sugar and that the Cuties Juice was the superior, healthier choice. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 294 (*Hartford*) [discussing this example].) Such statements, if disparaging, can be actionable by a competitor in a claim for trade disparagement (*id.*, at pp. 284, 291, 294) and, if untrue, by consumers under the Unfair Competition Law, false advertising law and the CLRA.

And at the far end of the spectrum are statements a business affirmatively and truthfully makes about its product and which do not on their face mention or otherwise reference its competing products at all. Because, as noted above, a statement

12

may be "fraudulent" (and hence actionable) if it is "deceptive and misleading in its implications" (*Wahl, supra*, 39 Cal.App.2d Supp. at p. 773; *Abbott Laboratories, supra*, 971 F.2d at p. 13), whether a truthful statement about one's own product is actionable turns on whether a reasonable consumer is (1) likely to infer from such a statement that the very same statement is untrue as to comparable, competing products, (2) likely to infer that the product at issue is consequently superior to its competition, and (3) likely to be deceived if the statement is *true* as to the comparable, competing products?

We hold that such statements are not actionable as a matter of law, and do so for three reasons. First, a reasonable consumer is unlikely to make the series of inferential leaps outlined above. Second, we are hesitant to adopt a theory upon which "almost any advertisement [truthfully] extolling" a product's attributes "would be fodder for litigation." (*Hartford, supra*, 59 Cal.4th at p. 299.) Third, the weight of other authority has come to the same conclusion. A water bottle label with a green waterdrop may suggest "'something to do with the environment,'" but does *not* imply that it is "environmentally superior to that of the competition" and thus does not constitute a "fraudulent" statement under the Unfair Competition Law, the false advertising law, or the CLRA. (*Hill, supra*, 195 Cal.App.4th at pp. 1298, 1300-1301, 1307.) An example vividly makes our point: Assume that a new airline runs an ad with a tagline, "No Hijackers Allowed." Is a reasonable consumer likely to infer that other airlines *do* allow hijackers and that the new airline is consequently the safer choice? We think the answer to this question is "no."

13

The allegations in this case fall on this far end of the spectrum and, for that reason, are not actionable as a matter of law.  That is because plaintiff alleges that Califia's inclusion of "No Sugar Added" on the Cuties Juice label implies that "competing brands" "*do* contain added sugar," that Cuties Juice is "different and healthier than [these] competing brands of tangerine juice" and that consumers are likely to be deceived because not all of those competing brands contain added sugar.  Because, as noted above, a reasonable consumer is not likely to engage in these inferential leaps, we conclude that the "No Sugar Added" label on Cuties Juice is not actionable as a matter of law. (Accord, *Major v. Ocean Spray Cranberries, Inc.* (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 23542, at *10-*11 (*Major*) [reaching same conclusion]; but see, *Gina Park v. Knudsen & Sons, Inc.* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 189227, *24 -*25 (*Park*) [coming to opposite conclusion].)

Plaintiff offers three arguments against this conclusion.

First, she argues that whether a label's content is likely to deceive is a factual question that cannot be decided on demurrer. Although "whether consumers are likely to be deceived is" typically "a question of fact" (*Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226 (*Chapman*); *Gregory v. Albertson's Inc.* (2002) 104 Cal.App.4th 845, 857), that issue may be resolved on demurrer if "the facts alleged fail as a matter of law to show" that a "reasonable consumer would be misled" (*Hill*, *supra*, 195 Cal.App.4th at p. 1301; *Rubenstein*, *supra*, 14 Cal.App.5th at p. 877; *Chapman*, at pp. 226-227).  Here, they do.

Second, she asserts that we must accept as true her allegation that the "No Sugar Added" statement "is likely to deceive reasonable consumers . . ."  However, this is a legal

14

conclusion, not a factual allegation; as such, it is neither binding nor "controlling." (*Gutierrez, supra,* 19 Cal.App.5th at p. 1242).

Third, she urges that a conclusion in her favor is dictated by *Brady v. Bayer Corp.* (2018) 26 Cal.App.5th 1156 (*Brady*). *Brady* held that a complaint alleging that the label on a vitamin bottle entitled "One A Day" was likely to deceive a reasonable consumer because the recommended dosage was *two* vitamins a day was sufficient to withstand a demurrer. (*Id.* at pp. 1165-1173.) Because the label in *Brady* involved a deceptive statement about the product itself, *Brady* falls squarely on the actionable part of the spectrum described above.

### 2. *Is the "No Sugar Added" language unlawful?*

Federal regulations specify that the "term 'no sugar added' may be used" on a label only if the product meets five prerequisites. (21 C.F.R. § 101.60(c)(2).) Plaintiff alleges that the Cuties Juice label violates these regulations because Cuties Juice does not meet two of the five prerequisites. Because noncompliance with this regulation would render the Cuties Juice label unlawful under both federal *and* California law (Health & Saf. Code, §§ 110760, 110100, subd. (a)), we must examine whether plaintiff has sufficiently alleged noncompliance with these two prerequisites.

#### a. *Comparability to food Cuties Juice "resembles"*

Under the federal regulation, the words "no sugar added" "may be used [on a food label] only if," among other things, "[t]he food it resembles and for which it substitutes normally contains added sugars." (21 C.F.R. § 101.60(c)(2)(iv).) Plaintiff alleges that Cuties Juice does not satisfy this prerequisite because "[t]he food that Cuties Juices resembles and substitutes for is 100% tangerine juice," which "does not normally contain added sugars."

15

The trial court came to a contrary conclusion, ruling that Cuties Juice resembles and substitutes for "all fruit juices," many of which "normally contain added sugars."  We are therefore confronted with the following question:  Is it appropriate under this regulation to define the food a product "resembles and for which it substitutes" solely as food that is *identical* to the product?  This is a legal question subject to our independent review (*Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214 ["Interpretation of a statute or regulation is . . . an issue of law for the court."]), and plaintiff's allegation on this legal question is entitled to no weight (*Gutierrez, supra*, 19 Cal.App.5th at p. 1242).

We conclude that a "food" that a product "resembles and for which it substitutes" may not be defined solely as the food identical to the product itself.  We reach this conclusion for two reasons.

First and foremost, the plain language of the pertinent regulations so dictate.  (*Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.* (9th Cir. 2002) 307 F.3d 1214, 1219 ["the plain meaning of a regulation governs . . ."].)  The regulation itself refers to foods that "substitute" for the product, and a product generally does not substitute only for itself.  This reading is confirmed by the pertinent introductory regulation that defines a "'substitute food'" as "one that may be used interchangeably with another food that it resembles" because "it is organoleptically, physically, and functionally (including shelf life) *similar* to" that food.  (21 C.F.R. § 101.13(d), italics added; see *id.* § 101.60(a)(2) [requiring that labels accord "with the general requirements for nutrient content" in section 101.13].)  The

16

regulation's focus on foods "similar" to the product—rather than "identical" to it—further supports our construction.

Second, defining the "food" that a product "resembles and for which it substitutes" as solely the identical foodstuff also renders the remaining prerequisites superfluous. That is because, for any product that meets the threshold requirement of having no sugar added, the identical foodstuff will *also* have no sugar added and hence will not "normally contain[] added sugars." (21 C.F.R. § 101.60(c)(2)(iv).) As a result, this prerequisite will *never* be met and will by itself preclude use of the term "No Sugar Added," effectively rendering the remaining prerequisites superfluous. We decline to rewrite the regulation to excise four of its five requirements. (E.g., *Vogel v. County of Los Angeles* (1967) 68 Cal.2d 18, 26 [a "court cannot rewrite . . . regulations"].)

We recognize that several federal district courts have taken different approaches to this question. Some cases have reached the same conclusion we do, but via a different rationale by reasoning that the "No Sugar Added" regulation is ambiguous and that an agency letter has resolved that ambiguity by declaring that the "substitute" food for "juices with no added sugar" are "juices with added sugar, fruit-flavored soft drinks sweetened with sugar, or other sugar-sweetened beverages." (*Wilson v. Odwalla, Inc.* (C.D. Cal. 2018) 2018 U.S. Dist. LEXIS 137456, \*7-\*12; *Perez v. Kroger Co.* (C.D. Cal. 2018) 336 F. Supp. 3d 1137, 1139-1145.)[3] Other cases have reached a contrary

---

3      Because we reject the rationale of these cases, we have no occasion to consider the agency letter in this case, and deny Califia's request that we take judicial notice of that letter.

17

conclusion, ruling that "the food" that a product "resembles and for which it substitutes" is the identical food. (*Park*, *supra*, 2015 U.S. Dist. LEXIS 189227, *21-*22; *Rahman v. Mott's LLP* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 11767, *17 & fn. 5; *Saghian v. Sun-Maid Growers of Cal.* (C.D. Cal. 2017) 2017 U.S. Dist. LEXIS 221951, *10.) All of these decisions are merely persuasive authority (*Rohr Aircraft Corp. v. County of San Diego* (1959) 51 Cal.2d 759, 764 ["[T]he decisions of the lower federal courts on federal questions are merely persuasive."], reversed on other grounds in *Rohr Aircraft Corp. v. County of San Diego* (1960) 362 U.S. 628), and we do not find them persuasive because they do not confront—let alone refute—the rationale we have set forth above.

We are also not persuaded by the passage from the federal regulation's legislative history set forth in the operative complaint. That passage explains that the purpose of the "No Sugar Added" regulation was to "present consumers with information that allows them to differentiate between similar foods that would normally be expected to contain added sugars." (58 Fed.Reg. 2302, 2327 (Jan. 6, 1993).) This does not require comparison to *identical* foods, particularly given its reference to "*similar* foods."

Because the sole food that plaintiff alleges substitutes for Cuties Juice is "100% tangerine juice," and because we conclude that the "food" that the product "resembles and for which it substitutes" may not solely be the identical food, plaintiff has failed to allege that Cuties Juice does not satisfy this prerequisite. At this point, we need not decide whether the relevant "food" for comparison is all tangerine juices or instead, as the trial court cited, "all fruit juices." What matters is that

18

there is no allegation that either of these broader universes of foods does not "normally contain added sugars."

        b.     *Failure to state that Cuties Juice is not a "low calorie" or "calorie reduced" food*

Under the federal regulation, the words "no sugar added" "may be used [on a food label] only if," among other things, "[t]he product bears a statement [(1)] that the food is not 'low calorie' or 'calorie reduced' (unless the food meets the requirements for a 'low' or 'reduced calorie' food) and [(2)] that directs consumers' attention to the nutrition panel for further information on sugar and calorie content."  (21 C.F.R. § 101.60(c)(2)(v).)

Plaintiff alleges that the Cuties Juice label does not contain either of these additional statements and that this violates the regulation because "Cuties Juice does not meet the requirements for a 'low' or 'reduced' calorie food."  However, this allegation is insufficient to state a claim that the Cuties Juice label is unlawful under the Unfair Competition Law for two reasons. First, we harbor some doubt that plaintiff's "'[t]hreadbare recital[] of th[is] element[] of [her] cause of action'" is sufficient. (*Trazo v. Nestlé USA, Inc.* (N.D. Cal. 2013) 2013 U.S. Dist. LEXIS 113534, *28-*29 [sustaining demurrer, in part, based on language identical to that used by plaintiff].)  Second, even if we deem plaintiff's allegation to be sufficient, plaintiff does not have standing to bring a claim based on the omission of this language because, as discussed next, she has not alleged that her decision to purchase the Cuties Juice had anything to do with its calorie content.

        3.     *Does plaintiff allege facts sufficient to grant her standing?*

As noted above, a plaintiff has standing to sue under the Unfair Competition Law, the false advertising law and the CLRA

only if she "actual[ly] reli[ed]" on whatever defect in a product label allegedly makes it actionable when making her decision to buy the product. (*Kwikset*, *supra*, 51 Cal.4th at pp. 317, 326-327.) To satisfy this requirement, she must "truthfully allege" that "she would not have bought the product but for the" allegedly actionable misrepresentation or omission. (*Id.* at pp. 317, 330.)

Because we have rejected plaintiff's claims to the extent they rely on any deceptiveness in the Cuties Juice label, her sole viable theory for recovery is the alleged unlawfulness of that label—which, as described above, turns solely on the label's failure to state that it is "not 'low calorie' or 'calorie reduced.'" However, plaintiff has not alleged that her decision to buy Cuties Juice had anything to do with its calorie content. Instead, she alleges that her decision was based upon her children's enjoyment of "eating fresh tangerines" and her concern about sugar content due to her diabetes. Indeed, in light of plaintiff's further allegation that *all* "tangerine juice brands[] ha[ve] high [natural] sugar content," plaintiff's decision to buy Cuties Juice over other tangerine juices seems to have had nothing to do with calorie content at all. Because plaintiff has not "truthfully allege[d]" that "she would not have bought the product but for" the omission of a statement about its calorie content, she lacks standing to pursue a claim based on the omission of that statement. (See *Major*, *supra*, 2015 U.S. Dist. LEXIS, at *13 [reaching same conclusion].)

Plaintiff offers three arguments to the contrary.

First, she asserts that "'a presumption, or at least, an inference of reliance arises whenever there is a showing that a misrepresentation [or omission] is material'" (*Tobacco II*, *supra*, 46 Cal.4th at p. 327, quoting *Engalla v. Permanente Medical*

20

*Group, Inc.* (1997) 15 Cal.4th 951, 976-977), and that the omission of the "not 'low calorie' or 'calorie reduced'" statement from the Cuties Juice label is material as a matter of law because its inclusion is (sometimes) mandated by the federal regulation. We reject this assertion. Even if we accept that this presumption regarding materiality of misrepresentations or omissions (which bear more on deceptiveness) is relevant to a claim based on unlawfulness and even if we assume that it applies to a plaintiff as well as class members, the presumption has been rebutted by plaintiff's affirmative allegations that she actually relied on *other* reasons in deciding whether to buy Cuties Juice.

Second, plaintiff contends that she can show reliance upon a particular omission as long as it was "a substantial factor[] in influencing [her] decision" to buy a product, and that she need not show it was "the sole or even the decisive" reason for the purchase. (*Tobacco II*, *supra*, 46 Cal.4th at pp. 326, 328.) While we accept this statement of the law, we reject its relevance to this case because plaintiff has not alleged that low calorie content is one of many reasons for her purchase; rather, she has alleged that her purchase was motivated only by two completely different reasons.

Lastly, plaintiff argues that we should infer that a statement regarding Cuties Juice's calorie content would be material to her due to her diabetes. We reject this argument. Although a person diagnosed with diabetes would most certainly be concerned with a product's *sugar* content, such a diagnosis does not imply a person's concern with *calorie* content.

\*     \*     \*

In light of this analysis, we have no occasion to address plaintiff's further attacks on the *reasoning* set forth in the trial

21

court's order sustaining the demurrer. (See *Bains v. Moores* (2009) 172 Cal.App.4th 445, 478 [in reviewing a demurrer, we examine the trial court's "'result for error, and not its legal reasoning' [Citation]"].)

## II. Was Leave to Amend Properly Denied?

A plaintiff against whom a demurrer is sustained is entitled to leave to amend the defective complaint if she can "prov[e] a reasonable possibility that the defect can be cured by amendment." (*Silva v. Block* (1996) 49 Cal.App.4th 345, 349; *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) The onus is on the *plaintiff* to articulate the "specifi[c] ways" to cure the identified defect, and absent such an articulation, a trial or appellate court may grant leave to amend "only if a potentially effective amendment [is] both apparent and consistent with the plaintiff's theory of the case." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 (*CAMSI*).)

The trial court did not abuse its discretion in denying plaintiff leave to amend her complaint. Plaintiff proffered no specific amendments to the trial court. She proffers none to this court beyond her blithe remark that "there could well be ways that any defect in the present pleading could be corrected." This is plainly insufficient to carry her burden. Nor do we perceive on our own an "apparent" "potentially effective amendment" that is "consistent with plaintiff's theory of the case." (*CAMSI, supra,* 230 Cal.App.3d at p. 1542.) Plaintiff's deception-based allegations are deficient as a matter of law. And her unlawfulness allegations are deficient either as a matter of law or because she does not have standing based on the reasons she has affirmatively alleged for buying Cuties Juice. She has elected not

22

to amend her complaint to cure the latter defect twice before, and we view that decision, as well as her current decision not to articulate any possible amendment, as precluding a finding that further possible amendments are apparent and consistent with her theory of the case.  (Accord, *Otworth v. Southern Pac. Transportation Co.* (1985) 166 Cal.App.3d 452, 457 ["When a plaintiff elects not to amend the complaint, it is presumed that the complaint states as strong a case as is possible."].)

## DISPOSITION

The judgment of dismissal is affirmed.  Califia is entitled to its costs on appeal.

**<u>CERTIFIED FOR PUBLICATION</u>.**


_____, J.
HOFFSTADT

We concur:


_____, P.J.
LUI


_____, J.
CHAVEZ

24